IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STARVAGGI INDUSTRIES, INC.,
a West Virginia corporation,

        Plaintiff,

v.                                      Civil Action No. 5:14CV66
                                                     (STAMP)
WEIRTON PLAZA DEVELOPMENT, LP,
an Ohio limited partnership transacting
business in the State of West Virginia,

        Defendant.


**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.  Procedural History

        The plaintiff originally filed this civil action in the
Circuit Court of Brooke County, West Virginia.  ECF No. 2.  The
plaintiff's claim arises from the terms of a lease agreement
between the plaintiff, as lessee, and the defendant, as lessor.  In
particular, the defendant alleged that the plaintiff failed to
tender a timely notice of renewal regarding the lease agreement
term.  Pursuant to West Virginia Code § 55-13-1, the plaintiff now
seeks a declaratory judgment from this Court declaring the
following: (1) the lease agreement remains effective and (2) the
term of the lease agreement extends for an additional five years.
The plaintiff also requests that this Court find that (1) the
plaintiff substantially complied with or is excused from any
noncompliance with the renewal terms, (2) the defendant suffered no
prejudice as a result of relying on the plaintiff's alleged

noncompliance, and (3) the public policy of West Virginia favors all of the above findings. Finally, the plaintiff also seeks to enjoin the defendant from denying the lease agreement's validity, but has yet to file a separate motion for an injunction. The defendant then filed a counterclaim, requesting a declaratory judgment that determines that the lease remained effective, that the plaintiff is enjoined from the property, and that all fees are awarded to the defendant. ECF No. 8. The defendant also did not file a motion for an injunction.

At issue now is the defendant's motion for summary judgment, where it asserts three primary arguments. ECF No. 32. First, the defendant claims that Ohio law applies under the choice of law analysis in <u>General Elec. Co. v. Keyser</u>, 275 S.E.2d 289, 293 (W. Va. 1981). Regarding that argument, the defendant notes that the lease contains a choice of law provision that requires the Court to apply Ohio law. Second, the defendant asserts that the lease agreement at issue is unambiguous regarding its renewal requirements. In particular, the defendant refers to the terms that require the lessee to submit to the lessor a notice of renewal five months before the expiration of the lease. The defendant then argues that the plaintiff did not tender a notice of renewal until 21 days before the lease expired, approximately four months after the due date for the notice of renewal. Third, the defendant believes that the plaintiff's argument under the doctrine of honest

mistake fails as a matter of law, relying on <u>Fifth Third Bank W.</u>
<u>Ohio v. Carroll Bldg. Co.</u>, 180 Ohio App. 3d 490 (Ohio Ct. App.
2009). Instead, the defendant claims that the plaintiff is not
entitled to equitable relief because its failure to timely renew
resulted from the plaintiff's negligence, not an honest mistake.
Furthermore, the defendant argues that Ohio does not recognize the
doctrine of honest mistake. For those reasons, the defendant
requests that this Court grant its motion for summary judgment.

The plaintiff then filed its response in opposition. ECF No.
34. The plaintiff first agrees that Ohio law applies in this civil
action. In contrast to the defendant's claim, however, the
plaintiff next argues that Ohio has adopted the doctrine of honest
mistake in notice of renewal cases. The plaintiff heavily relies
on <u>Sierra 76, Inc. v. TA Operating, LLC</u>, 848 F. Supp. 2d 812, 815
(N.D. Ohio 2012), <u>Vivi Retail, Inc. v. E&A Northeast, L.P.</u>, 2008 WL
4263446 (Ohio Ct. App. 2008), and <u>Ward v. Washington Distributors,</u>
<u>Inc.</u>, 425 N.E.2d 420 (Ohio Ct. App. 1980). The plaintiff then
asserts that the allegedly late notice of renewal did not prejudice
the defendant. In the alternative, the plaintiff proposes that the
defendant waived any claims of untimely renewal because its sub-
lessee, Ponderosa System, Inc. ("Ponderosa"), timely renewed. For
those reasons, the plaintiff claims that the defendant's motion
should be denied. The defendant then filed a reply in support of
its motion for summary judgment. ECF No. 35. First, the defendant

claims that Ohio does not recognize the doctrine of honest mistake. Second, the defendant disputes that it waived the renewal requirements. For those reasons, the defendant again argues that its motion should be granted.

Later, the parties indicated that settlement negotiations were ongoing, and thus filed a joint motion to continue the trial date and certain pretrial deadlines. ECF No. 40. This Court granted the parties' first joint motion to continue, and thus delayed ruling on the defendant's motion for summary judgment. ECF No. 42. The parties then filed a second motion to continue the trial date and related deadlines because of the ongoing settlement negotiations. ECF No. 43. Regarding the parties' second motion to continue, this Court conducted a hearing on the matter. At that hearing, this Court granted the parties' second joint motion, but directed the parties to file any notice that a potential settlement had or had not been finalized by February 27, 2015. ECF No. 46. On February 20, 2015, counsel for the defendant contacted the Court and indicated that settlement negotiations had terminated.

Now that the settlement negotiations have terminated, the defendant's motion for summary judgment is ripe for ruling. For the reasons discussed below, the defendant's motion for summary judgment is granted.

II.  <u>Facts</u>

In 1975, the plaintiff and the defendant's predecessors in interest entered into the lease agreement at issue.  The lease agreement provided an initial term "for a period of twenty-three (23) years subject to Lessee's option to extend as hereinafter provided."  ECF No. 5-1 Ex. 1.  Regarding the option to extend the term of the lease, the lease provides the following under "ARTICLE III, OPTIONS TO RENEW":

> Provided this Lease is in full force and effect at the time of the commencement of the applicable renewal term, Lessee shall have the option to renew this lease for three (3) successive terms of five (5) years each at the same annual rental and under the same terms, conditions and provisions as established herein for the original term of the Lease.  Any renewal option to be effective must be exercised by the Lessee by written notice to Lessor at least five months prior to the commencement date of the renewal term.

<u>Id.</u>  Regarding any notices that the lease agreement may require, including the notice of renewal, it states that "[a]ny notices or consents required to be given by or on behalf of either party to the other shall be in writing and shall be given by mailing such notices or consents by registered or certified mail, return receipt requested" to that party's listed address.  <u>Id.</u>  The lease agreement also provides that wherever times or dates are referenced, "[t]ime shall be deemed of the essence."  <u>Id.</u>  Furthermore, the lease also includes a choice of law provision that requires the "laws of the State of Ohio" govern the "validity, performance, and enforcement of this Lease."  <u>Id.</u>

In 1988, the plaintiff and defendant succeeded their predecessors in interest. Prior to that succession, the plaintiff's predecessor in interest also subleased a portion of the property to Ponderosa, which still remains effective. ECF No. 32 Ex. 2.[1] The lease agreement also authorized Ponderosa to submit a notice of renewal on behalf of the predecessor-in-interest. Since then, the plaintiff tendered timely written notices of renewal when such renewal periods arose in 2004 and 2008. ECF No. 32 Exs. 6 and 7. After those prior renewals, another renewal period arose in 2013. That renewal period, which currently is at issue, was scheduled to expire on April 30, 2014. Under the terms of the lease agreement, the plaintiff had to tender a notice of renewal to the defendant by December 1, 2013. Ponderosa initially gave the plaintiff a notice of renewal in October 2013, but later gave the plaintiff a "superseding" notice of renewal in January 2014. Ponderosa's notice of renewal, however, was not tendered to the defendant. The plaintiff did not send the defendant a notice of renewal until April 9, 2014, approximately three weeks before the expiration of the lease. Id. at Ex. 17.

Upon receipt of the plaintiff's late notice of renewal, the defendant informed the plaintiff that its notice had no force or

---

[1]Later, the predecessors-in-interest amended the lease agreement. ECF No. 32 Ex. 3. That amendment provided two additional renewal options for the lessor, lessee, and Ponderosa. Thus, the lease agreement increased the available renewal options from three to five.

effect.  The defendant pointed to the plaintiff's failure to comply with the renewal requirements under the lease agreement.  Further, the defendant, having yet to receive the plaintiff's notice of renewal, entered into substantive negotiations with a new lessee.  ECF Nos. 12 and 15.  Following the defendant's response to the plaintiff's untimely renewal, the plaintiff filed this civil action.

### III.  Applicable Law

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact."  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the Supreme Court of the United States noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set

forth specific facts showing that there is a genuine issue for trial ." <u>Anderson</u>, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074, 112 S. Ct. 973, 117 L.Ed.2d 137 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u>

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. Discussion

The central issue here is whether the plaintiff's failure to tender a timely notice of renewal can be excused under the doctrine of honest mistake. The parties both agree that, pursuant to the forum selection clause in the lease, Ohio law applies. *See, e.g.*, *General Elec. Co. v. Keyser*, 275 S.E.2d 298, 298 (W. Va. 1981) ("Generally, most courts will uphold a choice of law provision."). The defendant argues that the lease agreement is unambiguous in requiring that a notice of renewal is due five months in advance of the expiration of the lease term. The defendant also asserts that the plaintiff's untimely notice of renewal is neither justified nor effective under the doctrine of honest mistake. In particular, the defendant claims that Ohio does not recognize that doctrine, citing to *Fifth Third Bank W. Ohio v. Carroll Bldg. Co.*, 180 Ohio App. 3d 490 (Ohio Ct. App. 2009). Instead, the defendant argues that the plaintiff's failure is attributed to its own negligence.

The plaintiff, however, argues that Ohio recognizes the doctrine of honest mistake, citing to *Sierra 76, Inc. v. TA Operating, LLC*, 848 F. Supp. 2d 812, 815 (N.D. Ohio 2012), *Vivi Retail, Inc. v. E&A Northeast, LP*, 2008 WL 4263446 (Ohio Ct. App. 2008), and *Ward v. Washington Distributors, Inc.*, 425 N.E.2d 420 (Ohio Ct. App. 1980). Although the defendant entered into

9

negotiations with a new lessee, the plaintiff asserts that the defendant suffered no prejudice as a result of the plaintiff's untimely notice. Finally, the plaintiff believes that because Ponderosa tendered a timely notice of renewal to the plaintiff but not the defendant, the defendant waived its right to terminate the lease. For those reasons, the plaintiff claims that this Court should grant it equitable relief under the doctrine.

Under Ohio law, "courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement." Shifrin v. Forest City Enterprises, Inc., 597 N.E.2d 499, 501 (Ohio 1992) (citing Kelly v. Med. Life Ins. Co., 509 N.E.2d 411 (Ohio 1987)). Further, if the terms in a contract are unambiguous, "courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Shifrin, 597 N.E.2d at 501 (citing Alexander v. Buckeye Pipe Line Co., 374 N.E.2d 146, 150 (Ohio 1978)). In determining if a contract is ambiguous, Ohio uses the following test: "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Shifrin, 597 N.E.2d at 501 (internal citations omitted). It should be noted, however, that hardship in satisfying the terms of a contract does not itself create ambiguity. As the Ohio Supreme Court determined, "where a

contract is plain and unambiguous, it does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto and a corresponding advantage of the other, [and] that it is not the province of the courts to relieve parties of improvident contracts." Ohio Crane Co. v. Hicks, 143 N.E. 388, 389 (Ohio 1924).

Under the Ohio law described above, the renewal provision of the lease is unambiguous. Giving the words of the lease their ordinary meaning, the plaintiff had to tender a written notice of renewal to the defendant five months before the expiration of the lease. As even the plaintiff admits, that did not happen. See ECF No. 2. Rather, the plaintiff submitted a notice of renewal approximately four months past the renewal deadline. Further, the five-month notice requirement under the lease does not result in "manifest absurdity" or demonstrate another meaning. In fact, the plaintiff had previously tendered notices of renewal in a timely fashion concerning the prior renewal periods. ECF No. 32 Ex. 6 and 7. Thus, the renewal period under the lease agreement was nothing new. Accordingly, such terms are given their ordinary meaning. Given their ordinary meaning, the words of the lease provide an unambiguous requirement that the plaintiff failed to adhere to if it wished to renew the lease agreement.

Despite the untimely renewal, the plaintiff argues that under the doctrine of honest mistake, this Court should give the

plaintiff's untimely renewal full effect. Case law concerning the doctrine of honest mistake is both varied and unclear. Honest mistake is best demonstrated by certain facts or incidents in the context of when a lessee fails to tender a timely notice of renewal. Such incidents where courts applied the doctrine and granted equitable relief include the mail-services failure to deliver a lessee's notice of renewal, <u>Sy Jack Realty Co. v. Pergament Syosset Corp.</u>, 267 N.E.2d 462 (N.Y. 1971), ambiguity in the terms of the lease regarding how to renew, <u>Duncan v. G.E.W. Inc.</u>, 526 A.2d 1358, 1362 (D.C. 1987), and a late mailing of renewal after timely and orally confirming it, <u>Application of Topp</u>, 81 N.Y.S.2d 344 (N.Y. Sup. Ct. 1948). See <u>Wharf Restaurant, Inc. v. Port of Seattle</u>, 605 P.2d 334, 341 (Wash. Ct. App. 1979); <u>Jones v. Gianferante</u>, 111 N.E.2d 419 (N.Y. 1953) (lease proved ambiguous in how and when the lessee could renew). Generally speaking, in jurisdictions that accept and enforce the doctrine of honest mistake, equity will intervene in situations where the lessee fails to timely tender a notice of renewal if "(1) the tenant's delay in renewing was slight, (2) the delay did not prejudice the landlord, and (3) failure to grant relief would cause a tenant unconscionable hardship." <u>Duncan</u>, 526 A.2d at 1364 (internal citations omitted); see <u>American Houses v. Schneider</u>, 211 F.2d 881 (3d Cir. 1954).

Although the above law generally discusses the doctrine of honest mistake in this context, the issue now becomes whether Ohio

12

law recognizes the doctrine, and if so, would it apply in this civil action. The parties both essentially argue that the Ohio Supreme Court, the highest court in Ohio, has not definitively decided on whether, in particular, the doctrine of honest mistake can apply to excuse a lessee's failure to timely renew a lease agreement. <u>See</u> ECF Nos. 18 and 33. The parties disagree, however, about whether the doctrine would nonetheless apply in this civil action. The plaintiff relies on <u>Sierra 76, Inc. v. TA Operating, LLC</u>, 858 F. Supp. 2d 812 (N.D. Ohio 2012), <u>Vivi Retail, Inc., v. E&A Northeast L.P.</u>, No. 90527, 2008 WL 4263446 (Ohio Ct. App. 2008), and <u>Ward v. Washington Distributors, Inc.</u>, 425 N.E.2d 420 (Ohio Ct. App. 1980). Regarding those cases, the plaintiff asserts that not only have Ohio courts provided equitable relief, including under the doctrine of honest mistake, but that the Ohio Supreme Court would also do the same. The defendant argues the opposite, citing to <u>Fifth Third Bank W. Ohio v. Carroll Bldg. Co.</u>, 905 N.E.2d 1284 (Ohio Ct. App. 8th Dist. 2009), for the proposition that the Ohio Supreme Court would reject it.

Before delving into the cases listed above, it should be noted that when federal courts exercise diversity jurisdiction, they "must apply the state law in accordance with the highest state court." <u>Ventura v. The Cincinnati Enquirer</u>, 396 F.3d 784, 792 (6th Cir. 2005) (citing <u>Zeigler v. IBP Hog Market, Inc.</u>, 249 F.3d 509, 517 (6th Cir. 2001)). Because no "on point" Ohio Supreme Court

13

cases exist regarding the issue in this civil action, this Court may look to Ohio's lower courts. <u>Sierra 76, Inc.</u>, 858 F. Supp. 2d at 815 (citing <u>Ventura</u>, 396 F.3d at 792). Further, this Court will view the intermediate state appellate court decisions "'as persuasive unless' it can be demonstrated that the Ohio Supreme Court would decide the matter differently." <u>Sierra 76, Inc.</u>, 858 F. Supp. 2d at 815 (quoting <u>In re Dow Corning Corp.</u>, 419 F.3d 543, 549 (6th Cir. 2005)). With the above before it, this Court will analyze the cases upon which the parties primarily rely.

In <u>Ward v. Washington Distributors, Inc.</u>, the Ohio Court of Appeals for the Sixth District framed the issue as "whether equity will relieve a tenant from a forfeiture of a valuable right to renew a lease term, when the option to renew is exercised after the specified renewal date," and whether such equitable relief was warranted. 425 N.E.2d at 422. The facts of <u>Ward</u> involved lessees that (1) misread the thirty-day renewal requirements of the lease agreement, (2) improperly filed their lessor's notice that the renewal option would soon expire, and (3) then submitted a notice of renewal within one day after the lease expired and thirty days after the renewal period passed. <u>Id.</u> at 421-422. In particular, the lessee in <u>Ward</u> relied on a "lease digest sheet" that its employee prepared, which provided the incorrect renewal deadline. In assessing the circumstances, the court in <u>Ward</u> determined the following:

> Equity will relieve a lessee from the consequences of a
> failure to give notice at the time, or in the form and
> manner, required as a condition precedent to the renewal
> of a lease, where such failure results from accident,
> fraud, surprise or honest mistake, and has not prejudiced
> the lessor; and, there are other special circumstances
> which have been held to warrant a court of equity to
> grant relief from the consequences of the lessee's
> failure to notify the lessor within the stipulated time
> or in the specific form or manner prescribed.

Id. (internal citations omitted). The Ward court then found that the delay in renewal resulted from honest, good-faith mistakes, referring to the improper filing of the lessor's letter and misreading the lease. Because the lessees failed to timely renew due to "clerical" errors, the Ward court provided equitable relief for the lessees.

Later, in 2008, the Ohio Court of Appeals for the Eighth District cited to Ward in Vivi Retail, Inc. v. E&A Northeast L.P. No. 90527, 2008 WL 4263446, at *3. The facts of Vivi Retail also involved a lessee who untimely filed a notice of renewal. In Vivi Retail, the lease agreement required the lessee to tender a notice of renewal to the lessor within 120 days of the lease agreement's expiration date. Id. at *1. Although the lessee did not technically renew within 120 days, the lessor called the lessee to ask if the lessee wanted to renew the lease. Id. The lessee responded that he wanted to renew, and said that his lawyer would contact the lessee. Id. The lessee's lawyer contacted the lessor shortly thereafter. Id. The lessor neither rejected the oral confirmation nor objected to the "untimely" notice of renewal that

15

the lessee's attorney later submitted. _Id._ Despite the lessee's apparently proper renewal, the lessor, after several months, determined that the lessee's renewal was ineffective. _Id._ at 2. The court, relying on _Ward_, first determined that the lessee's failure to timely renew was an honest mistake. _Id._ at 3. The evidence in _Vivi Retail_ showed that the lessor even admitted that the lessee forgot to renew due to an honest mistake. _Id._ Further, the court also found that the lessor waived the notice requirements found under the lease by accepting the lessee's oral confirmation and subsequent letter without objection. _Id._ Next, the court found that the lessor suffered no prejudice from the untimely renewal because it only engaged in cursory negotiations, rather than substantial agreements, with a potentially new lessee. _Id._ The lessor also informed its potentially new lessee that its current lessee renewed the lease. _Id._ Under those circumstances, the court in _Vivi Retail_ found that the lessee was entitled to equitable relief.

Following the decision in _Vivi Retail_, the United States District Court for the Northern District of Ohio addressed a similar issue in _Sierra 76, Inc. v. TA Operating, LLC_, 858 F. Supp. 2d 812 (N.D. Ohio 2012). In _Sierra 76_, the issue was whether the Court would apply equitable principles to excuse the lessee's late notice of renewal. _Id._ In particular, the lease required the lessee to submit a notice of renewal 15 months in advance. _Id._ at

813. The lessee, however, submitted its notice of renewal three months late, blaming its tardiness on a computer glitch that deleted a calendar reminder of when to renew. <u>Id.</u> The lease also provided that the parties must apply the laws of "Ohio, Cuyahoga County," located in Ohio's Eighth District. <u>Id.</u> at 816. The parties then filed motions for summary judgment.

Because of the choice of law provision, the court in <u>Sierra 76</u>, sitting in diversity, assigned more weight to the decisions of the Eighth District Court of Appeals of Ohio. <u>Id.</u> The court also noted that not only had the Ohio Supreme Court provided no decision on the issue of that civil action, but also that the Ohio appellate districts were split on the issue. <u>Id.</u> Because the court assigned more weight to the Eighth District's decisions, the court first found that the Eighth District recognized equitable relief under <u>Ward</u> and <u>Vivi Retail</u>. <u>Id.</u> at 817. Second, the court determined that the issue of whether the failure to give notice, resulting from a computer glitch, constituted an honest mistake was a question of fact. Because of that, the court in <u>Sierra 76</u> denied the parties' motions for summary judgment on the issue. <u>Id.</u>

Regarding the above cases where the courts provided equitable relief, those cases shared three similar traits. First, unusual situations existed as to the failure to tender a timely renewal. In <u>Ward</u>, the lessees relied on an employee's erroneous determination of the renewal date and then later improperly filed

17

their lessor's notice that the renewal option would expire. In
Vivi Retail, the lessee relied on the lessor's apparent waiver of
the lease agreement's terms where the lease required a timely
notice of renewal. Although equitable relief was not provided in
Sierra 76, the tenant failed to timely renew because of a computer
glitch. Those instances demonstrate that unusual reasons, beyond
mere negligence on the part of the lessee, usually must exist when
considering equitable relief in this context. Second, the above
cases involved situations where the lessees submitted or attempted
to submit tardy notices of renewal between one and three months
after the expiration date. Third, the lessors in those cases
experienced no prejudice from relying on their lessees' untimely
notice of renewal. Most relevant to this civil action, the lessor
in Vivi Retail briefly discussed renting to a new lessee, and even
advised the new lessee that the current lessee renewed its lease.
The plaintiff relies on those cases for the proposition that Ohio
courts could provide equitable relief in circumstances like those
of this civil action under the doctrine of honest mistake. With
that information in mind, this Court will next address the case
that the defendant primarily relies on.

Similar to the facts in the cases discussed above, the issue
in Fifth Third Bank W. Ohio v. Carroll Bldg. Co. involved a
lessee's failure to timely renew. 905 N.E.2d at 1284. In Carroll
Bldg. Co., the lease agreement required the lessee to tender a

18

notice of renewal within six months of the expiration date. <u>Id.</u> at
1286. The lessee, however, did not contact the lessor about
renewing until one month after the lease period expired, which was
seven months after the notice of renewal was due. <u>Id.</u> The court
in <u>Carroll Bldg. Co.</u> first noted that the renewal process in the
lease contained unambiguous language. <u>Id.</u> at 1287. Next, the
court determined that the holding in <u>Ward</u> could not be reconciled
with the Ohio Supreme Court's holdings regarding unambiguous
contract language. The court stated the following:

> We cannot reconcile the holding in <u>Ward</u> with the Supreme
> Court's holdings that unambiguous contractual language
> must be enforced as written, even when it will work a
> hardship on one party (or parties) and an advantage to
> another. The Supreme Court [of Ohio] has clearly
> asserted that "[t]he law will not insert by construction
> for the benefit of one of the parties an exception or
> condition which the parties either by design or neglect
> have omitted from their own contract." [(internal
> citations omitted)]. Cases of contractual interpretation
> should not be decided on the basis of what is just or
> equitable; when both parties had equal bargaining power
> and there is no evidence of fraud or bad faith, a court
> will not save one party from an improvident contract.
> [(internal citations omitted)].

<u>Id.</u> (quoting <u>Montgomery v. Liberty Twp. Bd. of Edn.</u>, 131 N.E. 497
(Ohio 1921)). Accordingly, the court determined that the trial
court incorrectly granted equitable relief to the lessee. <u>Id.</u> The
court also noted that the lessee, rather than the lessor, had the
responsibility of notifying the lessor about its intent to renew.
<u>Id.</u> at 1288. In particular, the lease agreement stated that the
"[l]essee shall notify Lessor in writing . . . of its intent to

exercise the ensuing [renewal option]." <u>Id.</u> at 1286. For those reasons, the court reversed and remanded the judgment of the trial court, rejecting its application of equitable relief under <u>Ward</u>.

After analyzing the above case law and facts, this Court agrees with the court in <u>Carroll Bldg. Co</u>. Like the situation in <u>Carroll Bldg. Co.</u>, the terms of renewal under the lease agreement are unambiguous. The lease agreement explicitly states, "Any renewal option to be effective must be exercised by the Lessee by written notice to Lessor at least five months prior to the commence date of the renewal term." As determined earlier, because those terms are unambiguous, the ordinary meaning of the terms apply. Second, the plaintiff tendered its notice of renewal approximately three weeks before the expiration of the lease, almost four months after the due date for the notice of renewal. Third, as in <u>Carroll Bldg. Co.</u>, the plaintiff had no peculiar or unusual reason for failing to file a timely notice of renewal. In fact, the plaintiff previously tendered timely notices of renewal for two prior renewal periods. ECF No. 32 Exs. 6 and 7. Thus, the notice requirement was not a new or surprising requirement. It should also be noted that the defendant was under no requirement to ask the plaintiff if it intended to renew. Similar to the lease in <u>Carroll Bldg. Co.</u>, the lease in this civil action states that "[a]ny renewal option to be effective must be exercised **by Lessee** by written notice to the Lessor. . . ." (emphasis added). Therefore, the plaintiff had the

responsibility to tender the notice of renewal rather than await an inquiry from the defendant. For those reasons alone, the plaintiff is not entitled to equitable relief. Furthermore, no genuine issues of material fact exist in this civil action. Accordingly, the defendant's motion for summary judgment must be granted.

Even if the cases that the plaintiff cites definitively controlled in this civil action, the same result occurs. As stated earlier, in the cases the plaintiff cites, the reasons for failing to tender a timely notice of renewal were unusual. Here, the facts show that the plaintiff's failure to tender a timely notice of renewal resulted from its own negligence, not an honest mistake. It should be noted that the plaintiff received Ponderosa's timely notice of renewal as to the sublease well before the deadline for the plaintiff's notice of renewal. That could have alerted the plaintiff to its own renewal requirements, which the record shows it complied with on two prior occasions. ECF No. 32 Exs. 6 and 7. Furthermore, the cases that the plaintiff cites involved lessors that experienced no prejudice as a result of an untimely notice of renewal. As the court in Ward determined, equity may apply in situations like this civil action where the failure to timely file a notice of renewal (1) "results from accident, fraud, surprise or honest mistake" and (2) the untimely notice of renewal "has not prejudiced the lessor." The Ward court also indicated that "other

special circumstances" may exist in such cases that warrant equitable relief.

Assuming _arguendo_ that the plaintiff satisfied the first requirement, here the defendant will experience significant prejudice. Specifically, the defendant argues that not only will the plaintiff receive rental payments from Ponderosa that are now tendered to the defendant, but the defendant will also be denied the rent from a new lessee. ECF No. 33. Unlike the cases that the plaintiff cites, where the lessors either had no new lessee selected or where the discussions with a new lessee were in their infancy, here the defendant received a letter of intent that provide a determined rental term, calculated rental payment increases, and other details. This situation contrasts with the cases the plaintiff cites because here the defendant, as lessor, will be prejudiced because it relied on the lack of a notice of renewal. Therefore, equitable relief remains unwarranted. Accordingly, the defendant's motion for summary judgment must be granted.

The plaintiff also argues that the defendant waived its claims regarding the plaintiff's untimely renewal. Specifically, the plaintiff claims that the lease agreement prohibits the defendant from disturbing Ponderosa's occupancy of the premises. ECF No. 32 Ex. 3. As mentioned earlier, Ponderosa timely submitted a notice of renewal to the plaintiff but not the defendant. Because of

that, the plaintiff argues the following: "By agreeing to this provision [that the defendant will not disturb Ponderosa's occupancy of the premises], [the defendant] essentially waived any notice since [the defendant] would not, as a matter of common sense, have received notice of Ponderosa's renewal with [the plaintiff] until a later date, such as when [the defendant] possibly sought to evict Ponderosa." Therefore, because of this allegedly inconsistent behavior, the plaintiff argues that the defendant waived the lease agreement's requirement concerning a timely notice of renewal.

Under Ohio law, a "waiver" in the contract context is defined as the following:

> a voluntary relinquishment of a known right. It may be made by express words or by conduct which renders impossible a performance by the other party, or which seems to dispense with complete performance at a time when the obligor might fully perform. Mere silence will not amount to waiver where one is not bound to speak.

White Co. v. Canton Transp. Co., 2 N.E.2d 501, 505 (Ohio 1936); see Vivi Retail, Inc., 2008 WL 4263446, at *4 ("[W]aiver of a contract term can occur when a party conducts itself in a manner inconsistent with an intention to insist on that term") (citing Convenient Food Mart, Inc. v. Atwell, No. 2003-174, 2005 WL 407581 (Ohio Ct. App. 2005))). Under the law described above, the plaintiff's argument lacks merit. The defendant correctly points out the following portion of the lease agreement:

23

> Upon the exercise by Ponderosa of any of its renewal
> options under this agreement . . . Ponderosa is hereby
> authorized by [the plaintiff] to serve notice to [the
> defendant] on behalf of [the plaintiff], of the exercise
> of the applicable renewal option under [the lease]
> . . . . Such notice from Ponderosa to [the defendant]
> shall constitute effective notice under [the lease] of
> the applicable option to renew.

ECF No. 32 Ex. 3.  The above quoted section precedes the portion of
the lease that the plaintiff argues demonstrates an alleged waiver
by the defendant.  As the above quoted portion of the lease shows,
Ponderosa could tender a notice of renewal on behalf of the
plaintiff.  Such notice, however, had to be sent to the defendant.
That did not happen.  Instead, the record shows that Ponderosa
tendered a timely notice of renewal to the plaintiff but not the
defendant.  Therefore, the unambiguous terms of the lease were not
satisfied.  Accordingly, the plaintiff's assertions concerning
waiver equally lack merit.

## V.  Conclusion

For the reasons described above, the defendant's motion for
summary judgment (ECF No. 32) is GRANTED.  Accordingly, all other
pending motions are hereby DENIED AS MOOT.  Further, it is ORDERED
that this civil action be DISMISSED and STRICKEN from the active
docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum
opinion and order to counsel of record herein.  Pursuant to Federal

Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment

on this matter.

     DATED:    March 3, 2015


                                  /s/ Frederick P. Stamp, Jr.
                                  FREDERICK P. STAMP, JR.
                                  UNITED STATES DISTRICT JUDGE